IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASAAN ALLAH QIYDAAR                    :

                                        :

      v.                                :   Civil Action No. DKC 19-1371

                                        :

BALTIMORE CITY BOARD
OF SCHOOL COMMISSIONERS                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case is the motion for sanctions filed by Plaintiff (ECF No. 25), the motion for summary judgment filed by Defendant Baltimore City Board of School Commissioners ("BCBSC" or "Defendant") (ECF No. 26), and the cross motion for summary judgment filed by Plaintiff (ECF No. 31).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, the motion for sanctions will be denied, BCBSC's motion for summary judgment will be denied in part and granted in part, and Plaintiff's cross motion for summary judgment will be denied.

**I.   Background**

Jasaan Qiydaar ("Plaintiff") is a former employee of BCBSC.[1] BCBSC is a partnership between the Mayor and City Council of Baltimore and the State of Maryland.  (ECF No. 4-1, at 3).  It "is

---

[1] Unless otherwise noted, the following facts are undisputed.

the local education authority in Baltimore City and provides a free public education to students residing there." (*Id.*).

Plaintiff worked as a teacher for BCBSC from approximately August 2000 to June 2008.  Plaintiff's conditional certification lapsed in 2008 rendering him ineligible for rehire.[2]  At present, Plaintiff has not obtained his certification.[3]  From 2009 to 2011, Plaintiff "started a nonprofit" and "provided mentoring, success skills, character education, and internship/job opportunities for students."  (ECF No. 10, ¶ 6).  In 2011, the Merit Academy of

---

[2] Plaintiff testified at his deposition that he received a letter explaining that "if [he did not] become fully certified by the next school year . . . then [he] would be released[.]"  (ECF No. 26-2, at 13).  Plaintiff challenges BCBSC's inclusion of his deposition transcripts in its motion for summary judgment, arguing that BCBSC "unlawfully waived Plaintiff's rights to read and sign the documents."  (ECF No. 31, at 14).  Plaintiff does not challenge the substance of the deposition testimony and it will be considered.

[3] Plaintiff admits that he does not have his certification now but challenges BCBSC's assertion that he has never been re-certified since his release in 2008.  (ECF No. 31, at 5, 19 ("Although Plaintiff [] is currently in the process of becoming re-certified, Plaintiff has not applied to any teaching positions at BCBSC since 2012.  Defendant conveniently leaves out this fact in its narrative, yet consistently references Plaintiff's 'lack of' current certification as legal justification for denying Plaintiff access to over 30 (thirty) non-teaching positions[.]") (emphasis omitted)).  Plaintiff received another conditional certification in January 2011.  (ECF No. 31-13; *see also* ECF No. 31-19, at 1).  According to documents submitted with Plaintiff's cross motion, however, the State of Maryland allows only "two conditional certificates[]" and Plaintiff "exhausted this and cannot be hired without a standard certificate into a certificated position."  (ECF No. 31-19, at 2).  Nonetheless, Plaintiff could and did apply for non-certificated positions.  (*Id.*).

Technology and Science ("MATHS"), a now defunct charter school operated by Eudaimonia Foundation, hired Plaintiff as a behavior specialist.  Plaintiff agrees that his employment at MATHS did not make him a BCBSC employee.  (ECF No. 26-3, at 10).  Plaintiff's employment at MATHS ended in 2011, although the reason for the conclusion is unclear.

In December 2011, Plaintiff filed a discrimination charge with the Maryland Commission on Civil Rights ("MCCR") against Eudaimonia Foundation.  (ECF No. 10, ¶ 7).  The MCCR amended the charge to include BCBSC in February 2012.  (*Id.*).  Eudaimonia Foundation and Plaintiff settled the charge.  (*Id.*).

Since 2011, Plaintiff has applied unsuccessfully for over 34 positions with BCBSC.  Some of the positions required certification and others did not.  Plaintiff alleges that BCBSC "blacklisted" him from future employment in retaliation for Plaintiff's discrimination charge against Eudaimonia Foundation.  Plaintiff details his various application efforts in the amended complaint. There seem to be two incidents central to his retaliation allegation.  First, in an internal BCBSC e-mail dated August 24, 2012 and released to Plaintiff under the Maryland Public Information Act, Ms. Lakeysha Hill responded to Ms. Pamela Smith's inquiry about Plaintiff's viability as a candidate for a vacant special educator position: "Mr. Jasaan Qiydaar is a[n] ex-employee with BCPS.  Unfortunately, he is ineligible to be considered for

employment at this time." (ECF No. 26-6, at 2).  Second, on April
11, 2013, Plaintiff e-mailed Mr. Jerome Jones and asked if he was
"eligible to be considered for employment with Baltimore City
Public Schools[.]" (*Id.*, at 4).  Mr. Jones replied that Plaintiff's
"record indicates [he was] dismissed because [he] did not have a
valid teaching certificate and that [he was] eligible for
consideration for rehire[.]" (*Id.*).  A few hours later, Mr. Jones
elaborated:

> I did not know until I read your last e-mail that
> your case was closed, you simply asked if you could be
> considered for employment with Baltimore City Schools.
> We have positions that do not require a teaching
> certificate, although there are very few vacancies for
> these positions.  You still cannot be hired as a teacher
> with City Schools if you do not have a certificate issued
> by the Maryland State Department of Education (MSDE).
>
> You could not be hired as a Special Education
> Teacher because you did not have a professional
> certificate to teach, issued by MSDE.  Your latest
> employment, which involved working in a City School was
> as an employee of the [c]harter that runs MATHS.
>
> As I stated in my earlier response to you, our
> personnel system indicates you are eligible to apply and
> would be considered for employment, assuming we have a
> vacancy, you have the qualifications, apply for the
> job[,] and get selected as the top candidate.  You would
> not be treated any differently than any other candidate.
>
> I do not appreciate your e-mail, which insinuates
> there was some nefarious plot to deny you a position
> because of your suit.  The fact is nothing has changed
> between the time you were dismissed as a teacher in City
> [S]chools and now, you simply do not hold the requisite
> certificate for the position.  If your real question is
> could you be hired as a teacher for City Schools without
> a valid certificate, then the answer to that question is
> no.

(ECF No. 26-6, at 6).[4]   Four days after receiving these e-mails,
on April 15, 2013, Plaintiff e-mailed Dr. Andres Alonso and Dr.
Kimberly Lewis, copying Mr. Jones, regarding "employment
discrimination and retaliation (blacklisting)." (*Id.*, at 10-13).
Plaintiff explained that he had applied unsuccessfully for over
ten positions within BCBSC since filing his discrimination charge
against Eudaimonia Foundation and detailed the e-mail responses of
Ms. Hill and Mr. Jones. (*Id.*).  Plaintiff concluded: "I have been
unfairly made the target of [BCBSC's] collective retaliation after
I petitioned your organization to intervene in stopping
discrimination, harassment, and workplace bullying." (*Id.*, at
13).  Plaintiff notified the recipients that he would "pursue legal
action if [the retaliation] is not immediately ended." (*Id.*, at
10).

On June 24, 2013, Plaintiff submitted an equal employment
opportunity complaint form with BCBSC's Office of EEO Compliance.
(ECF No. 31-16).   On September 13, 2013, the Office of EEO
Compliance informed Plaintiff that it had "completed a thorough
investigation of the allegation of retaliation for filing a
discrimination complaint" and concluded that "[a]fter careful

---

[4] BCBSC identifies Ms. Hill and Mr. Jones as employees in
BCBSC's human resources department. (ECF No. 26-1, at 2-3).
Plaintiff identifies Ms. Hill as BCBSC's "Human Capital Network
Specialist" and Mr. Jones as BCBSC's "Labor Relations Manager."
(ECF No. 10 ¶¶ 10,13; *see also* ECF No. 26-6, at 11-12).

review and consideration of the evidence, the allegation that [Plaintiff] raised [was] found to be unsubstantiated."[5]  (ECF No. 31-18).

On June 17, 2018, the United States Equal Employment Opportunity Commission ("EEOC") Baltimore Field Office found "reasonable cause to believe that [BCBSC] violated [Title VII of the Civil Rights Act of 1964 ("Title VII")] when it failed to hire [Plaintiff]."  (ECF No. 1-1, at 2-3).  On February 8, 2019, following an unsuccessful conciliation attempt, the United States Department of Justice issued a notice of right to sue within 90 days to Plaintiff.  (*Id.*, at 1).

On May 9, 2019, Plaintiff initiated this action and filed a complaint against "Baltimore City Public Schools."  (ECF No. 1). Plaintiff amended his complaint to name BCBSC as the defendant on July 1, 2019.[6]  (ECF No. 10).  The amended complaint asserts one claim: retaliation in violation of Title VII.  The court issued a

---

[5] Plaintiff challenges the thoroughness of the investigation, emphasizing the investigator's part-time status and vacation schedule.

[6] Counsel for BCBSC filed a motion to dismiss explaining that Baltimore City Public Schools "is not a legal entity with the capacity to be sued."  (ECF No. 4-1, at 1).  Plaintiff responded in opposition and filed a motion for leave to amend.  (ECF Nos. 7; 8).  The court denied as moot Plaintiff's motion for leave to amend because Fed.R.Civ.P. 15(a)(1) allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under [Fed.R.Civ.P. 12(b)]" and accepted Plaintiff's amended complaint for filing.  (ECF No. 9).

scheduling order on July 17, 2019, instructing the parties to file a status report on or before November 29, 2019 and setting the dispositive motions deadline as December 30, 2019. (ECF No. 12). Plaintiff filed a status report on December 6, 2019 (ECF No. 20), but it did not timely reach chambers. As a result, the court ordered the parties to submit a jointly prepared status report by December 30, 2019 (ECF No. 19). BCBSC filed a status report and also filed a motion for extension of time to file dispositive motions on December 30, 2019. (ECF Nos. 21; 22). The next day, the court granted BCBSC's motion for extension of time and allowed BCBSC until January 10, 2020 to file a motion for summary judgment, allowed Plaintiff until February 7, 2020 to file an opposition to BCBSC's motion and his own cross motion for summary judgment, allowed BCBSC 21 days from the filing of Plaintiff's opposition and cross motion within which to file its reply and opposition, and allowed Plaintiff 21 days from the filing of that paper within which to file his reply. (ECF No. 23). Plaintiff filed another status report on January 2, 2020. (ECF No. 24).

Plaintiff filed the presently pending motion for sanctions on January 7, 2020. (ECF No. 25). BCBSC responded in opposition on January 17, 2020 (ECF No. 29), and Plaintiff replied (ECF No. 30).

BCBSC filed the presently pending motion for summary judgment on January 10, 2020 (ECF No. 26), and Plaintiff filed an opposition and cross motion for summary judgment on February 7, 2020 (ECF No.

31).[7]  BCBSC replied on March 3, 2020 (ECF No. 32), and Plaintiff replied on March 24, 2020 (ECF No. 33).

## II.  Motion for Sanctions

### A.  Standard of Review

"If, after notice and a reasonable opportunity to respond, the court determines that [Fed.R.Civ.P. 11(b)] has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed.R.Civ.P. 11(c).  Fed.R.Civ.P. 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"[T]he central purpose of [Fed.R.Civ.P. 11] is to deter baseless filings . . . and thus . . . streamline the administration

---

[7] The clerk docketed Plaintiff's opposition and cross motion on February 11, 2020 but the filing stamp reflects 3:53 pm on February 7, 2020 as the filing time.  (ECF No. 31, at 1).

and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

**B. Analysis**

Plaintiff's motion for sanctions focuses on BCBSC's status report, motion for extension of time, and, to a lesser extent, disclosure of settlement discussions. (ECF Nos. 25; 30). BCBSC's response does not address directly Plaintiff's primary contentions but "opposes Plaintiff's motion for sanctions[]" and provides five reasons supporting its status report and motion for extension of time. (ECF No. 29, at 2).

Plaintiff contends that BCBSC structured its status report to give "the unambiguous impression that Defendant had collaborated with Plaintiff" on the requested joint status report. (ECF No. 25, ¶ 16; *see also* ECF No. 30, ¶ 21). BCBSC bracketed the word "joint" in its status report and explicitly stated in a footnote: "On December 6, 2019, without consulting counsel for Defendant BCBSC, Plaintiff filed, on his own, a status report with this [c]ourt. Moreover, Plaintiff makes misrepresentations within his status report indicative of the inability of the parties to make reasonable representations to this [c]ourt[.]" (ECF No. 21, at 1 n.1 (citation omitted)). Although BCBSC's status report discusses "the parties" *passim*, there is no ambiguity regarding the parties' collaboration. It is evident that they did not collaborate or file jointly.

9

Plaintiff also argues that BCBSC's motion for extension of time lacked evidentiary support. (ECF No. 25, ¶¶ 4-9; *see also* ECF No. 30, ¶ 20). Plaintiff emphasizes the following sentence from BCBSC's motion for extension of time: "Counsel has not been able to contact Plaintiff, who is *pro se*, on this issue relating to an extension request." (ECF No. 22, ¶ 7). Plaintiff notes that all of his information is current, emphasizes that the parties have been in contact via e-mail and telephone since September 2019, and underscores that the parties e-mailed on December 26 and 27, 2019 regarding the status report. (ECF No. 25, ¶¶ 4-8). BCBSC's motion did not state that counsel for BCBSC could never contact Plaintiff. Rather, the motion limited the lack of contact to the extension request. (ECF No. 22, ¶ 7). The motion also provided other reasons for the extension. (*Id.*, ¶¶ 1-6). The short extension did not prejudice Plaintiff, and his allegations of bad faith are unsupported.

Finally, Plaintiff challenges BCBSC's disclosure of his settlement proposal. (ECF No. 25, ¶¶ 27-29). As BCBSC emphasizes, "Fed.R.Evid. 408 has not been violated by BCBSC [because] this case has not proceeded to trial and BCBSC has never presented settlement discussions or 'compromise offers and negotiations' into evidence." (ECF No. 29, at 3). Indeed, BCBSC acted as instructed. (ECF No. 19, at 1-2 ("[T]he parties are directed to provide a jointly prepared status report by December 30, 2019,

covering . . . "[w]hether each party believes it would be helpful to refer this case to another judge of this court for a settlement or other ADR conference[.]"); *see also* ECF No. 12, at 1-2 ("The parties will file . . . a status report discussing . . . the possibility that the case will be settled."). Plaintiff's motion for sanctions will be denied.

**III. Cross Motions for Summary Judgment**

**A.   Standard of Review**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (2001). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251-22. Instead, the evidentiary materials must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* The facts are to be taken in the light most favorable to the party opposing summary judgment, the non-moving party.

"When cross motions for summary judgment are before a court, the court examines each motion separately, employing the familiar

standard under [Fed.R.Civ.P. 56]." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). The court must deny both motions if there is a genuine dispute of material fact, "[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright, et al., Fed. Prac. & Proc. § 2720 (4th ed).

### B. Analysis

BCBSC argues that Plaintiff's claim is untimely and, even if it were timely, Plaintiff produced no evidence of a causal connection between Plaintiff's protected activity and the adverse employment action. (ECF No. 26-1, at 6-10). Plaintiff contends that BCBSC retaliated against him within the statute of limitations and, regardless, the continuing violation doctrine applies. (ECF No. 31, at 20). Plaintiff also argues that genuine issues of material fact exist regarding his retaliation claim and that BCBSC did not have a legitimate, nondiscriminatory reason for refusing to interview or hire him for vacant positions.[8] (*Id.*, at 21-29).

### 1. Statute of Limitations

BCBSC argues that Maryland's three-year statute of limitations applies and bars Plaintiff's retaliation claim because

---

[8] Although styled as a cross motion for summary judgment, Plaintiff alternately states that there are genuine issues of material fact and that judgment for Plaintiff is proper.

Plaintiff alleges "that he became aware that he was 'blacklisted' and/or 'ineligible to be employed' by BCBSC in an [e-mail] dated August 24, 2012[.]" (ECF No. 26-1, at 6). BCBSC emphasizes that Plaintiff "filed an [equal employment opportunity complaint] alleging '[b]lacklisting' by BCBSC on April 15, 2013."[9] (*Id.*, at 6-7). BCBSC misses the mark.

Title VII requires a plaintiff to file an EEOC charge of discrimination within a prescribed limitations period. *See* 42 U.S.C. § 2000e-5(e)(1). In deferral states, like Maryland, the limitations period is 300 days from the date of the allegedly discriminatory act.[10] *Id.* Title VII opens the door for a private citizen to bring a civil action only upon either: (1) the dismissal of the administrative action by the EEOC, or (2) after 180 days have elapsed from the filing of the administrative claim with the EEOC. 42 U.S.C. § 2000e-5(f)(1). Once the door opens, the plaintiff has 90 days to file a claim. *Id.*

The EEOC Baltimore Field Office issued its determination on June 17, 2018 and, following an unsuccessful conciliation attempt,

---

[9] Plaintiff e-mailed BCBSC employees to notify them of his intent to file a complaint on April 15, 2013. (ECF No. 26-6, at 10-13). Plaintiff filed a complaint with BCBSC's Office of EEOC Compliance on June 24, 2013. (ECF No. 31-16).

[10] A "deferral state" is one that has its own state or local agency with authority to grant or seek relief from employment discrimination or to institute criminal proceedings on behalf of the alleged victim. 42 U.S.C. § 2000e-5(e)(1). The MCCR is the applicable state enforcement agency.

the Department of Justice notified Plaintiff of his right to sue on February 8, 2019.  (ECF No. 1-1).  Plaintiff filed suit on May 9, 2019, within the 90-day period.  Plaintiff's retaliation claim is exhausted and timely.[11]

### 2.  Retaliation

Title VII prohibits discrimination based on an employee's opposition to any employment practice made unlawful by Title VII or participation in any Title VII investigation, proceeding, or hearing.  42 U.S.C. § 2000e-3.  Plaintiff's retaliation claim falls under § 2000e-3.  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 (4th Cir. 2019).

"To evaluate Title VII claims in the absence of convincing direct evidence of discriminatory intent, courts apply the burden-shifting analysis outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973)."  *Chang Lim v. Azar*, 310 F.Supp.3d 588, 600 (D.Md. 2018).  Plaintiff does not provide direct evidence

---

[11] Although "a plaintiff may raise [a] retaliation claim for the first time in federal court[]" under certain circumstances, this is not such a case.  *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 303-04 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty. v. Davis*, 139 S.Ct. 1843 (2019) (holding that a retaliation claim need not be administratively exhausted if it relates back to a properly exhausted EEOC charge and declining to read a pendency requirement into *Nealon*); *Natal v. Arlington Cty. Public Schs.*, 2019 WL 2453659 at *3 n.2 (E.D.Va. June 12, 2019) ("[E]xhaustion is not a jurisdictional requirement, and may under certain circumstances be waived with respect to a retaliation claim[.]") (citation omitted).

for his retaliation claim and must proceed under the *McDonnell Douglas* approach.   Under the *McDonnell Douglas* approach, the plaintiff must first establish a *prima facie* case of discrimination.   *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).   If the plaintiff does so, the burden then shifts to the employer to assert a "legitimate, nondiscriminatory reason" for the allegedly discriminatory conduct.   *Id.*   "If the employer meets that burden of production, 'the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination."   *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558-59 (4th Cir. 2011) (quoting *Hill*, 354 F.3d at 285).

"To establish a *prima facie* claim of retaliation, a plaintiff must show: (1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him[,] and (3) there is a causal connection between the protected activity and the adverse action."   *Perkins*, 936 F.3d at 213.   BCBSC concedes that Plaintiff engaged in protected activity and suffered an adverse employment action.   (ECF No. 26-1, at 8 ("It is undisputed that Plaintiff's complaint filed with the [MCCR] was protected activity and . . . the non-hiring of Plaintiff since 2012 is considered an adverse employment action.)).   BCBSC argues that Plaintiff failed to prove retaliation "because there is absolutely

15

no evidence of a causal connection between the protected activity and the alleged adverse employment action." (*Id.*).

The United States Court of Appeals for the Fourth Circuit recently outlined the causation analysis:

> [T]o establish the necessary causation for a retaliation claim, "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). At the *prima facie* stage, a plaintiff does not have to show that "their protected activities were but-for causes of the adverse action." *Strothers*[ *v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018)]. However, he still must make some showing of causation. For example, a plaintiff may establish causation by showing that "(1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Id*. at 335-36.

*Perkins*, 936 F.3d at 214.   BCBSC cites *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2015), a recent decision of the Supreme Court of the United States, to argue that Plaintiff must prove but-for causation to establish a *prima facie* case of retaliation. (ECF No. 26-1, at 7). BCBSC is incorrect. The Fourth Circuit considered *Nassar* and concluded that it "does not alter the legal standard for adjudicating a *McDonnell Douglas* retaliation claim." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249-252 (4th Cir. 2015).[12]  Here, there is

---

[12] The Fourth Circuit explained that a plaintiff "must establish causation at two different stages of the *McDonnell Douglas* framework: first, in making a *prima facie* case, and second,

sufficient evidence for the *prima facie* case. The temporal proximity between a plaintiff's protected activity and an employer's materially adverse action may show causation. *See Strothers*, 895 F.3d at 336-337 ("The only remaining question is whether the [defendant] took adverse action against [the plaintiff] soon after learning of her complaint, [because] temporal proximity is sufficient to establish a causal connection at the *prima facie* stage."); *Foster*, 787 F.3d at 253 ("[Plaintiff's] evidence of temporal proximity also *tends to show causation*: according to her uncontradicted testimony, she complained . . . about perceived retaliation on September 21, 2007, and again on September 28, 2007, just a month before she was terminated."). In December 2011, Plaintiff filed a discrimination charge against Eudaimonia Foundation. In February 2012, the MCCR amended that charge to include BCBSC. Since that time, Plaintiff has advanced his retaliation claim and pursued unsuccessfully employment opportunities with BCBSC. The protected activity and the adverse employment action overlap, and there is a sufficient *prima facie* case.

---

in proving pretext and satisfying [his] ultimate burden of persuasion." *Foster*, 787 F.3d at 250. The Fourth Circuit concluded that "*Nassar* does not alter the causation prong of a *prima facie* case of retaliation[]" and that "the *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action." *Id.* at 251-52.

BCBSC also emphasizes that Plaintiff lacked, and continues to lack, "the requisite qualifications, i.e. certification, to be a teacher with BCBSC[.]" (ECF No. 26-1, at 9).   BCBSC thus seems to assert its legitimate, nondiscriminatory reason for the alleged retaliation.   Plaintiff counters that he has been certified to teach and that, regardless, he also applied for non-certificated positions.   (ECF No. 31, at 15, 19).

The evidence shows that the State of Maryland allows only "two conditional certificates[]" and Plaintiff "exhausted this and cannot be hired without a standard certificate into a certificated position."   (ECF No. 31-19, at 2).   Thus, even though Plaintiff again obtained conditional certification in January 2011, (ECF No. 31-13; *see also* ECF No. 31-19, at 1), he nevertheless remained ineligible for employment as a teacher.   Plaintiff has produced no evidence that BCBSC's reason for not hiring him for certificated teaching positions was pretext, only speculation.   BCBSC does not, however, present any legitimate, nondiscriminatory reason for failing to hire Plaintiff for the non-certificated positions to which he applied.   Absent such a reason, Plaintiff's retaliation claim may proceed with respect to BCBSC's failure to hire him for non-certificated positions.

## IV.   Conclusion

For the foregoing reasons, the motion for sanctions filed by Plaintiff will be denied, the motion for summary judgment filed by

Defendant BCBSC will be denied in part and granted in part, and the cross motion for summary judgment filed by Plaintiff will be denied.  A separate order will follow.

                                            /s/
                               DEBORAH K. CHASANOW
                               United States District Judge